FILED

2005 Mar-08  PM 12:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

QUINTINA DENNIS,

       Plaintiff,

    vs.                               CIVIL ACTION NO. CV 04-J-0924-S

AMERICAN FAMILY CARE, INC.,

       Defendant.

## MEMORANDUM OPINION

Pending before the court is defendant American Family Care Inc.'s motion for summary judgment and brief in support (docs. 17 and 18), plaintiff's response (doc. 20) and defendant's reply (doc. 22).[1] The court has reviewed the pleadings and the parties' evidentiary submissions (docs. 19, 21, and 23).  Based on a consideration of the foregoing and for the reasons set forth below, the court is of the opinion that defendant's motion for summary judgment is due to be **GRANTED.**

## I. Factual Background

The defendant operates a number of urgent care clinics in various cities of Alabama, including clinics in the Birmingham, Alabama area.  Defendant's Brief

---

[1] In plaintiff's opposition, she voluntarily dismissed her claims based on a racially hostile work environment and disparate pay, brought pursuant to Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. § 2000e *et seq.*) and 42 U.S.C. § 1981. Plaintiff's Opposition to Motion for Summary Judgment, p. 2 (doc. 20).  Therefore, the only remaining claim pending before the court is plaintiff's Title VII retaliation claim.

in Support of Motion for Summary Judgment, at 1 (doc. 18).  The plaintiff,
Quintina Dennis ("Dennis"), an African-American female and a former "front
desk" employee[2] of defendant's Greensprings clinic[3], filed this action against
defendant on May 5, 2004, alleging, inter alia, that the defendant retaliated against
her by discharging her for complaining of a racially hostile environment, in
violation of Title VII of the Civil Rights Act of 1964 as amended (42 U.S.C. §
2000e *et seq*.) and 42 U.S.C. § 1981.[4]  Complaint, ¶¶ 30-32.  However, the parties
agree that plaintiff was never formally terminated, but instead suspended pending
investigation. Defendant adds that plaintiff would have been terminated if she
reported to work.  Defendant's Brief in Support of Motion for Summary Judgment,
p. 5-6.

       The plaintiff alleges that she was suspended on or about January 29, 2004, in
retaliation for her complaints of a hostile work environment and disparate
treatment of African-Americans at the defendant's Greensprings clinic. Plaintiff's
Opposition to Motion for Summary Judgment, pp. 5-7.  Specifically, plaintiff
complained to Judy Pearce, Clinic Manager, about front office employees at the

---

       [2] A front desk employee greeted patients, answered the telephones, checked patients out,
accepted payment and took care of "batching out," i.e. delivering paperwork and payments to the
home office. Defendant's Brief in Support of Motion for Summary Judgment, p. 2; Dennis depo.,
pp 41-42.

       [3] The plaintiff also worked in defendant's Mountain Brook clinic as needed. *See e.g.,*
Dennis depo., p. 26.

       [4] The original complaint included nine additional plaintiffs.  On July 21, 2004, the court
issued an order severing the additional plaintiffs and their claims from the current suit (doc. 9).

Greensprings clinic, who were all African-American, being required to stay past their shift, contrary to company policy.[5]  Dennis depo., pp. 39-40, 42-44, 102.

Defendant alleges that plaintiff was suspended due to defendant's suspicion that plaintiff misappropriated a patient's payment. Defendant's Brief in Support of Motion for Summary Judgment, p. 11. The internal investigation which led to plaintiff's suspension was conducted by Kay Park ("Park"), Clinic Director for defendant, in response to an inquiry by insurer American International Underwriters ("AIU"). Affidavit of Kay Park, ¶ 2.  AIU's inquiry concerned its insured, Yuriko Soena, a patient at the Greensprings clinic.  Affidavit of Kay Park, ¶¶ 2, 4; Park depo., p. 30.  Park stated she was unable to locate the insured patient's name on defendant's patient master list, was unable to find any evidence of a payment made to the defendant and the patient's name appeared to be no longer in the computer. Affidavit of Kay Park, ¶ 3; Park depo., pp. 30-31. However, documents from AIU sent to defendant included a copy of a computer generated receipt issued by the defendant to Ms. Soena, reflecting her cash payment of $315.50. Affidavit of Kay Parks, ¶ 3.  While Ms. Soena was not on the sign in sheet, the patient's name was shown on other logs as having received a chest X-ray and other lab work on the date in question.  *Id.*, ¶ 4.  According to Park, "Dennis was the only individual who worked the front desk at the [the

---

[5]The plaintiff also testified that she complained to the manager of the Mountain Brook clinic that one of defendant's Mountain Brook doctors, Dr. Parks, told a nurse that a patient stated that "she did not want a nigger to touch her." Dennis depo., p. 26.

defendant's] Greensprings Clinic on November 29, 2003 and was thus the only individual involved in signing in patients, taking their payments, etc.  It was clear from my investigation that someone had accepted Ms. Soeno's cash payment without depositing it to [defendant]'s account or adding her as a patient." *Id*., ¶ 5. When confronted with the above evidence, plaintiff denied taking the cash payment, and was told that she was suspended pending further investigation. *Id.,* ¶ 7; Park depo., p. 31.  Park testified that she suspended plaintiff's employment pending investigation and "turned [the matter] over to the human resources department, and I don't know anything more from there." Park depo., p. 31.  The parties agree that the plaintiff did not report to work after the suspension and no formal termination was ever processed by the defendant. Affidavit of Kay Park, ¶ 7; Dennis depo., pp. 60-63.

Plaintiff alleges that the reason for her suspension was pretextual and it was really in retaliation for her complaints of discrimination.  To demonstrate pretext, plaintiff asserts that Traci Hallmark ("Hallmark"), a Caucasian front office employee, was not terminated for being short on her deposits. Dennis depo., pp. 80-81.  However, Hallmark was terminated from defendant's Greensprings clinic

for several reasons, including having been short on her deposits.[6]  Park depo., p. 37.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp*., 477 U.S. at 322-23.

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the

---

[6] According to Nora Steadman, defendant's Human Resources Director, Hallmark was terminated for "failure to report." Affidavit of Steadman, ¶ 3.  According to defendant's human resources records, Hallmark was terminated for "failure to show for scheduled shift, no doctors excuse, failure to follow printed schedule" (sic).  Plantiff Ex. 10, p. 3.

absence of a genuine issue of material fact. *Id*. at 323.  The burden then shifts to
the non-moving party to "go beyond the pleadings and by affidavits, or by the
'depositions, answers to interrogatories, and admissions on file' designate 'specific
facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.
R. Civ. Pro. 56(e).  In meeting this burden the non-moving party "must do more
than simply show that there is a metaphysical doubt as to the material facts."
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That
party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. Pro.
56(c); *Matsushita*, 475 U.S. at 587. *See also Anderson v. Liberty Lobby, Inc.*,  477
U.S. 242, 249 (1986).

    "The mere existence of some factual dispute will not defeat summary
judgment unless that factual dispute is material to an issue affecting the outcome of
the case ... A genuine issue of material fact does not exist unless there is sufficient
evidence favoring the nonmoving party for a reasonable jury to return a verdict in
its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000), quoting
*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  A factual dispute
regarding a non-material issue will not preclude the defendant from succeeding on
a motion for summary judgment.  *Brown v. American Honda Motor Co.*, 939 F.2d
946, 953 (11th Cir.1991).  However, the court should not make credibility
determinations, nor weigh the parties' evidence.  *See Stewart v. Booker T.
Washington Ins.*, 232 F.3d 844, 848 (11th Cir.2000).

## III. Analysis

Retaliation is a separate offense under Title VII. *See* 42 U.S.C.A. § 2000e-3(a). To recover for retaliation, the plaintiff "need not prove the underlying claim of discrimination which led to her protest," so long as plaintiff had a reasonable good faith belief that the discrimination existed. *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989); *Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1351 (11th Cir.1999). The elements of a retaliatory discharge claim under Title VII are (1) that the plaintiff was engaged in a statutorily protected expression; (2) that she suffered an adverse employment action; (3) that there is some causal relation between the two events.[7] *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571-72 (11th Cir.1993). If a *prima facia* case of retaliation is established, the employer must establish non-retaliatory reasons for the employment action. *Id.* The plaintiff can then refute the employer's proffered explanation by proving that it is a prextual reason. *Id.,* at 1572. Like all Title VII cases where pretext is an issue, the question the factfinder must answer is whether the defendant's proffered reasons were a coverup for a discriminatory decision. *Rojas v. State of Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002). The role of the court is not to determine whether employment decisions

---

[7]In *Meeks v. Computer Associates International*, 15 F.3d 1013, 1021 (11th Cir. 1994) citing *Reichhold*, 988 F.2d at 1571-72, the Eleventh Circuit Court of Appeals stated that the causal link requirement of a retaliation claim is broadly interpreted and "the plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated."

were prudent or fair, but rather whether unlawful discriminatory animus motivated the challenged employment decision. *Rojas,* 285 F.3d at 1342 (quoting *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999)).

In this case, defendant argues that plaintiff's retaliation claim fails because plaintiff has failed to satisfy the first and third prongs of a *prima facie* case, namely that plaintiff failed to show that she was engaged in statutorily protected activity and that there was not a causal connection between plaintiff's suspension and a protected activity. Defendant's Brief in Support of Motion for Summary Judgment, p. 11. However, the court finds that the plaintiff did engage in protected speech when she complained to Pearce that African-American employees at the Greensprings clinic had to stay past their shifts.[8] Dennis depo., pp. 39-40. The plaintiff was thereafter suspended. For the purposes of this opinion the court shall assume, without deciding, that plaintiff established a *prima facia* case of retaliation.[9] Even with this assumption, the court finds that defendant's motion for summary judgment is due to be granted. Defendant articulated a legitimate, non-discriminatory reason for the adverse job action, that it reasonably believed that the plaintiff stole a patient's payment. Because defendant met this burden, the plaintiff

---

[8]With regard to this first element, the plaintiff also testified that she complained to Todd Smith, a manager, one time. Dennis depo., p. 92, 118. However, plaintiff could not remember what the complaint was. Dennis depo. p. 92. The plaintiff also complained about Dr. Park's racial comment. Dennis depo., p. 26.

[9]Plaintiff argues that Kay Park, who instigated the investigation and suspended plaintiff, was aware of plaintiff's complaints. Plaintiff's Opposition to Motion for Summary Judgment, at 10.

8

must show that the reason offered for the adverse employment action was merely a pretext for discrimination.  The plaintiff has failed to make this showing.

Plaintiff asserts that "there is no evidence in the record that an investigation demonstrated [p]laintiff was guilty of anything." Plaintiff's Opposition to Motion for Summary Judgment, p. 9.  Plaintiff also alleges that the defendant never heard back from the police and the plaintiff was allowed to receive unemployment compensation.[10]  The court finds that none of the allegations address defendant's claim that plaintiff was suspended for stealing a patient's payment.  Park depo., p. 32; Dunn depo., p. 63.

Even though the plaintiff failed to show that defendant's legitimate, nondiscriminatory reason was pretextual, plaintiff may still be able to show discrimination sufficient to get past the defendant's motion for summary judgment. *Rojas*, 285 F.3d at 1343-1344.  To do so plaintiff must show that employees outside her protected class with similar employment histories were not subject to the same adverse employment action. *Id., citing Osram Sylvania, Inc. v. Teamsters Local Union 528*, 87 F.3d 1261, 1265 (11th Cir.1996).

Plaintiff argues that Hallmark, a similarly situated Caucasian employee who also worked in the front office, was not terminated for being short on her deposits. *See* Dennis depo., pp. 80-82.  However, Hallmark was terminated for a number of

---

[10]Kay Park stated that she was informed that the police would not investigate on site for claims of theft of less than $500.00.  Park affidavit, ¶ 6.  No evidence of the plaintiff's receipt of unemployment benefits is before the court.

reasons including for being short on her deposits.[11]  Park depo., p. 37.

Additionally, plaintiff has failed to demonstrate that Hallmark was a proper

comparator by showing that Hallmark was accused of stealing a patient's payment.

Plaintiff points to no other Caucasian in a similar position and with a similar

employment history who defendant believed stole funds and was retained.

    This court may not second guess the wisdom of defendant's decision to

suspend the plaintiff as long as that decision was not racially motivated.  *See*

*Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1341 (11th Cir.2000).  Upon

learning that a patient's name and payment had been partially removed from clinic

records, defendant conducted an internal investigation which led defendant to

conclude that plaintiff had stolen the payment in question.  Defendant suspended

the plaintiff based on that belief.

    Having considered the foregoing, the court is of the opinion that the plaintiff

has failed to show any evidence that the defendant's legitimate, non-discriminatory

---

[11]The relevant testimony is as follows:

Q: Has [Hallmark] had deposits that have come up short on occasion?
A: I believe she did.
Q: Tell me about that.
A: I don't remember any specifics. I remember she's one that I had to terminate.
Q: Was she terminated for coming up short on her deposits?
A: She was terminated for a combination of items.
Q: Which was?
A: Attendance, tardiness, short deposits, just poor quality of work.

Park depo., p 37.   Additionally, Sherri Dunn, defendant's director of Human Resources, testified that being short on deposit funds justified termination.  Dunn depo., p. 70.

reason was pretextual.  The court is therefore of the opinion that no genuine issue of facts remain and that the defendant is entitled to judgment in its favor as a matter of law.

### IV. Conclusion

For the forgoing reasons, the court hereby **GRANTS** the defendant's motion for summary judgment and **DISMISSES** this case **WITH PREJUDICE**.

**DONE** and **ORDERED** this the 8th day of March, 2005.

_____
INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE